IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN GIBSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 16 CV 4853 |
| v. | ) | |
| | ) | |
| THE QUAKER OATS COMPANY | ) | Hon. Charles R. Norgle |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Plaintiffs Kathleen Gibson, Danielle Cooper, Robyn Jaffee, and Lewis Daly, individually and behalf of others similarly situated, bring this diversity class action suit against the Quaker Oats Company's ("Defendant"). Plaintiffs seek damages for a litany of state and common law claims over the presence of glyphosate in a number of Defendant's products. Before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim, pursuant to Rule 12(b)(6). For the following reasons, the motion is granted.

## I. BACKGROUND

The Quaker Oats Company is the producer of a range of grain and cereal food stuffs. Among their products are: Quaker Oats Old Fashioned, Quaker Oats Quick 1-Minute, Quaker Steel Cut Oats, and Quaker Steel Cut Oats Quick 3-Minute (collectively, "Quaker Oats")—the subject of this lawsuit. To fulfil the market demand for Quaker Oats Defendant receives oats from a number of producers. During the production of the oats producers use a chemical, glyphosate, to aide in the drying of the oats and produce an earlier and more uniform crop. Plaintiffs' allege glyphosate has no health benefits and is only used to increase yield.

Glyphosate is the most prevalent herbicide in the world. The use of glyphosate is regulated jointly by the Environmental Protection Agency ("EPA") and the Food and Drug Administration ("FDA"). The EPA registers herbicides and their components and sets maximum amount of residue permitted in or on food products. In 1997 the EPA set a maximum tolerance of 20 parts per million on oats. In 2008 the tolerance for glyphosate on oats was raised to 30 parts per million from the previous maximum of 20.

Here, glyphosate is used as a drying agent to increase oat harvest. The herbicide is applied before harvest by growers—not by Defendant. In their complaint Plaintiffs allege that when they had Quaker Oats tested at an independent laboratory, glyphosate was present at a concentration of 1.8 parts per million. The laboratory used liquid chromatography mass spectrometry to detect the presence of glyphosate and determine its concentration. 1.8 parts per million is within the tolerance prescribed by the EPA for glyphosate present in oats. Consolidated Am. Class Action Compl. ¶ 126. (hereinafter, "Compl.").

Plaintiffs are four individuals purporting to represent a nationwide class of "[a]ll persons in the United States who have purchased the [Quaker Oats], for personal use, and not for resale, within any applicable limitations period until Notice is provided to the Class…" Compl. ¶ 13. They allege that there are a large number of people who have been induced to purchase Quaker Oats because of its labeling as "Natural." Compl. ¶¶ 101-112.

Plaintiff Kathleen Gibson is an adult individual and resident of Cook County, Illinois, who on several occasions purchased Quaker Oats Old Fashioned and Quaker Oats Quick 1-Minute from various Mariano's grocery stores in Chicago. Plaintiff Danielle Cooper is an adult individual and resident of San Francisco County, California, who frequently purchased Quaker Oats Old Fashioned and Quaker Oats Quick 1-Minute from a Safeway grocery store located in

San Francisco. Plaintiff Robyn Jaffee is an adult individual and resident of Dade County, Florida, who weekly purchased Quaker Oats Old Fashioned from a Publix store in Miami. And, Plaintiff Lewis Daly is an adult resident of Kings County, New York, who purchased Quaker Oats Quick 1-Minute from a Met Food in Brooklyn, New York.

Plaintiffs allege that when they were making their purchases they relied on the representations that Quaker Oats made on its packaging, specifically that Quaker Oats are: "'100% Natural Whole Grain,' and 'Heart Healthy,' and are 'part of a heart healthy diet.'" Compl. ¶¶ 36, 105. Plaintiffs allege that they would not have purchased Quaker Oats had they known of the presence of glyphosate and the dangers of ingestion. Moreover, Plaintiffs allege that they will not purchase any Quaker Oats while the contain glyphosate. Compl. ¶¶ 440-41.

## II. DISCUSSION

### A. Standing

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of a complaint. See Fed. R. Civ. P. 12(b)(1). Standing is the "threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). Standing contains three elements: "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (Scalia, J.) (internal citations and quotations omitted).

3

Here, Plaintiffs each allege that—at least once—they have purchased Defendant's products. Kathleen Gibson purchased Quaker Oats Old Fashioned and Quaker Oats Quick 1-Minute; Danielle Cooper purchased Quaker Oats Old Fashioned and Quaker Oats Quick 1-Minute; Robyn Jaffee purchased Quaker Oats Old Fashioned; and Lewis Daly is purchased Quaker Oats Quick 1-Minute. There are no allegations that any of the named plaintiffs ever purchased either Quaker Steel Cut Oats or Quaker Steel Cut Oats Quick 3-Minute.

Instead Plaintiffs argue that they have standing to pursue claims for products they did not purchase because those products are similar to the products purchased. Pls.' Opp'n Def.'s Mot. Dismiss 8. In support of this position Plaintiffs cite a single district court case from 2014, Mednich v. Precor Inc., 2014 WL 6474915 (N.D. Ill. Nov. 13, 2014). In that case Judge Leinenweber considered the similarity of the products as well as the similarities of the misrepresentations. While there are many similarities here in both the product and the alleged misrepresentations, the Court declines Plaintiffs' invitation to overlook the failure to allege particularity.

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S., at 560). That is to say Plaintiffs must have *personally* suffered some real or threatened injury. See Id. at 1548 (citing Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982)). Because none of the Plaintiffs allege a particularized injury vis-a-vi Quaker Steel Cut Oats or Quaker Steel Cut Oats Quick 3-Minute, any claim relating to those products must be dismissed.

**B. Failure to State a Claim**

A motion under Rule 12(b)(6) tests the sufficiency of the complaint under the plausibility

standard, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), not the merits of the suit, Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). "[A] plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) (quoting Twombly, 550 U.S. at 556). "To meet this plausibility standard, the complaint must supply 'enough fact to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." Id. (quoting Twombly, 550 U.S. at 556). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in a plaintiff's complaint, and draws all reasonable inferences in his favor. Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 504 (7th Cir. 2013) (citations omitted).

Here Plaintiffs bring a dozen different claims under Illinois, California, Florida, New York, and common law. Each of the claims is a variation on the Plaintiffs' theme—that the presence of glyphosate in Quaker Oats constitutes some omission of a material fact or was meant to mislead the average consumer.

The Illinois claims, Counts I and II, allege that Quaker Oats are misbranded or mislabeled because they fail to make note of the presence of glyphosate and that such omission constitutes a misrepresentation. The California claims, Counts III, IV, and V, allege that Defendant deceived consumers by labeling Quaker Oats as "Natural" and not disclosing the presence of glyphosate. Plaintiffs' Florida claim, Count VI, alleges deception because Defendant failed to disclose the presence of glyphosate. The New York claims, Counts VII and VIII, allege that the labeling of Quaker Oats as natural is deceptive because they contain glyphosate. Also, Count IX alleges false advertising because Quaker Oats were labeled as natural when they were contaminated with

5

glyphosate. Lastly, Plaintiffs' common law claims allege; negligent misrepresentation, Count X, for labeling Quaker Oats as "Natural" when they contain glyphosate; breach of express warranty, Count XI, for warranting Quaker Oats were "Natural" when they did not conform to that express warranty; and unjust enrichment, Count XII, because Defendant was unjustly enriched through its deception of the public.

Each of the above claims made by Plaintiffs share a common theme, that the use of the slogans "Natural," "100% Natural," "100% Natural Whole Grain," "Heart Healthy," or "part of a heart healthy diet," are deceptive because Quaker Oats contain trace amounts of glyphosate, a herbicide used in the harvesting process. The result of these claims is that Plaintiffs are attempting to challenge how food stuffs are marketed in Illinois, California, Florida, and New York.

The labeling of food, however, is governed by the Federal Food, Drug, and Cosmetic Act, as codified at 21 U.S.C. § 301 *et seq.*, specifically § 343-1(a). The National Uniform Nutritional Labeling portion of the act states:

> (a) Except as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce— (5) any requirement respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title, except a requirement respecting a claim made in the label or labeling of food which is exempt under section 343(r)(5)(B) of this title.

21 U.S.C. § 343-1(a). And, § 343 (r) discusses labeling food and food stuffs and the nutritional and dietary information that must be included therein. 21 U.S.C. § 343(r).

Here, the Court must examine the statute to determine whether congress intended to preempt the field of nutritional and food labeling. "Where a state statute conflicts with, or frustrates, federal law, the former must give way. In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute

6

pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, pre-emption will not lie unless it is the clear and manifest purpose of Congress." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663–64 (1993) (internal citations and quotations omitted). "Federal preemption of state law can occur in three circumstances: (1) express preemption where Congress explicitly preempts state law; (2) implied preemption where Congress has occupied the entire field (field preemption); and (3) implied preemption where there is an actual conflict between federal and state law (conflict preemption)." Gracia v. Volvo Europa Truck, N.V., 112 F.3d 291, 294–95 (7th Cir. 1997).

Examining the Food, Drug, and Cosmetic Act, it is obvious that Congress intended to prohibit states from imposing food labeling requirements on manufacturers. The statute states "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce[.]" 21 U.S.C. § 343-1(a). This is the sort of express language establishing a clear and manifest purpose that the Supreme Court called for in CSX Transp., Inc. v. Easterwood.

Moreover, § 346a, Tolerances and Exemptions for Pesticide Chemical Residues, addresses the presence of pesticides and herbicides present in foods and establishes tolerances for the same. See 21 U.S.C. § 346a. And, in that provision of the statute there is a sub-section addressing a state's authority to "establish or enforce any regulatory limit on a qualifying pesticide chemical residue in or on any food if a qualifying Federal determination applies[.]" 21 U.S.C. § 346a(n)(4). Here again there is the type of express language establishing a clear and manifest purpose that preempts state regulation of food labeling.

Lastly, the FDA has published guidance specifically addressing the use of the term "natural." See Use of the Term "Natural" in the Labeling of Human Food Products; Request for

Information and Comments, 80 FR 69905-01, 69906 (hereinafter "80 FR 69905-1") (collecting citations). The proposed rule states that "the use of the term 'natural,'... was not intended to address food production methods, such as ... *the use of pesticides*, ... nor did it explicitly address food processing or manufacturing methods[.] ... Furthermore, we did not consider whether the term 'natural' should describe any nutritional or other health benefit." Id. at 69907. Here, these regulations, coupled with the above statutory provisions appropriating responsibility for food labeling to the FDA, preempt the field. The express statutory language coupled with the pertinent guidance indicates congressional intent be the sole rule making body for the field of food labeling.

Because Congress has preempted the field of food labeling and because the presence of pesticides and chemical residues is governed by federal statute, Plaintiffs cannot challenge Quaker Oats labeling under state or common law. The result is that Plaintiffs cannot state a claim for relief, nor can they cure their Consolidated Amended Class Action Complaint.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. Plaintiffs' Consolidated Amended Class Action Complaint, and any claims therein, are dismissed with prejudice.

IT IS SO ORDERED.

ENTER:

*/s/ Charles R. Norgle*
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 14, 2017